## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| MELVIN ABDULLAH EL-AMIN | : | |
| | : | |
| | : | |
| v. | : | Civil No. CCB-11-3424 |
| | : | |
| | : | |
| JOHN BLOM, ET AL. | : | |
| | : | |
| | : | |

## <u>MEMORANDUM</u>

In a prior decision, this court dismissed plaintiff Melvin Abdullah El-Amin's Labor Management Reporting & Disclosure Act ("LMRDA") suit against his union, the International Longshoremen's Association Local 333 ("Local #333").  *See El-Amin v. Int'l Longshoremen's Ass'n Local #333*, No. 10-3653, 2011 WL 2580630 (D. Md. June 29, 2011).  Mr. El-Amin, proceeding pro se, then filed this claim against Julie Mitchell, Local #333's former secretary/treasurer; John Blom, Local #333's former president; and Earl McKnight, a former vice-president of Local #333 and current field representative for the union's pension.  The suit asks for many of the same remedies as the previous suit, including reinstatement of Mr. El-Amin's union membership, an upgrade in seniority, and damages.  The defendants in this case have filed motions to dismiss, and Mr. El-Amin has now filed a motion for leave to amend his complaint to again include Local #333 as a defendant.  The issues have been fully briefed and no oral argument is necessary.  *See* Local Rule 105.6.  For the following reasons, defendants' motions to dismiss will be granted and Mr. El-Amin's motion for leave to file an amended

complaint will be denied.

## I.     **BACKGROUND**

The events that gave rise to this action are discussed in the court's prior opinion and are repeated here in part.  On July 28, 2009, Mr. El-Amin, who was a member in good standing of Local #333, contacted Ms. Mitchell about the possibility of transferring his membership in the union to Local #1922 in Miami, Florida.  Ms. Mitchell served as Local #333's secretary/treasurer at the time.   Ms. Mitchell informed Mr. El-Amin that he could transfer his membership automatically so long as he was a member in good standing and she provided him with a letter that he could present to Local #1922 that stated as much.  Mr. El-Amin relocated to Florida on July 21, 2009, but was denied membership in Local #1922.

Mr. El-Amin alleges that Local #1922 denied the transfer because the letter provided to him by Ms. Mitchell did not satisfy the requirements of the International Longshoremen's Association's ("ILA's") constitution.  Specifically, the language of the constitution states:

> No local union shall accept into membership a member or members transferring from another local union except on the presentation of *an official I.L.A. transfer card*.  Any member of the I.L.A. making application for admission into a sister local must show a paid-up card from his local, together with a statement that there are no charges pending against him.

(ILA Constitution Art. XV § 3, ECF No. 17, Ex. 2 (emphasis added).)[1]  While Ms. Mitchell's

---

[1] In considering this motion to dismiss, the court relies on language from the ILA constitution and the copies of the letters to which Mr. El-Amin refers, even though these documents were attached to Mr. El-Amin's opposition brief. In appropriate circumstances, courts may allow "consideration of matters incorporated by reference or integral to the claim" without converting a motion to dismiss into a motion for summary judgment.  5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004); *see Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004); *HQM, Ltd. v. Hatfield*, 71 F. Supp. 2d 500, 502 (D. Md. 1999).

letter did state that Mr. El-Amin was a "member in good standings" [sic] and that he was "requesting transfer into Local #1922," (ECF No. 17, Ex. 1), Mr. El-Amin alleges that the letter was deficient because it was not on the official transfer card the ILA constitution appears to require.

Mr. El-Amin brought an action before the National Labor Relations Board ("NLRB") to challenge Local #1922's denial of transfer, though he ultimately suspended that action in order to exhaust his remedies through the appeals process provided by the ILA.  Later, Mr. El-Amin filed a Freedom of Information Act ("FOIA") request with the NLRB to gain access to any documents from the case file that had been created with regard to his request.  In return he received a redacted copy of a letter Ms. Mitchell had sent to Local #1922 on September 4, 2009, "to clear up any misunderstanding."  (September 4, 2009, Letter, ECF No. 17-2.)  The September 4, 2009, contained the following language:

> In advance I apologize if this past member has been any problems [sic] to you. This is a standard letter that we send out when our members transfer between locals in the AFL-CIO unions.  I had informed him that this letter doesn't promise him a guarantee to work or union membership and that work is slow all over.

(*Id.*)  Mr. El-Amin alleges in his complaint that Ms. Mitchell's use of the term "past member" in this letter was evidence that she had "clandestinely terminat[ed]" his membership with Local #333.  (Pl.'s Opp. to Def. Mitchell's Mot. Dismiss 15, ECF No. 17.).

After Mr. El-Amin's appeal to the ILA international office was unsuccessful, he returned to Baltimore and requested that his membership in Local #333 be reinstated by writing a letter to Rikir "Rocky" Mckenzie, whom Mr. El-Amin believed was the president of Local #333.  After Mr. El-Amin learned that Mr. Mckenzie was no longer president of Local #333, he made a

personal visit to Local #333's office in November 2010. Mr. El-Amin spoke with the ILA's general counsel, Andre Mazzola Mardon.  Mr. Mardon informed Mr. El-Amin that because he had not effectuated a transfer to Local #1922, he was still technically a member of Local #333. Mr. El-Amin then spoke with Local #333 interim president, Joseph Hodski, and Ms. Mitchell, both of whom informed Mr. El-Amin that his membership status with Local #333 would be reinstated after he paid his back dues, allegedly amounting to $1,500.  After learning about the amount of back dues he owed, Mr. El-Amin contacted an ILA Ethics Counsel, who allegedly suggested to Local #333 that Mr. El-Amin be allowed to pay a lesser amount of back dues to be reinstated.  Mr. El-Amin allegedly attempted to pay $195 in back dues, but Ms. Mitchell refused to accept his money before she received permission from Mr. Hodski.

Mr. El-Amin had yet to pay any back dues necessary to reinstate his membership when, on December 28, 2010, he filed his initial suit in this court, alleging violations of the LMRDA. In that suit, Mr. El-Amin named Local #333, Ms. Mitchell, and a John Doe union officer as defendants, and he sought full reinstatement of his ILA membership, an upgrade in seniority, and damages.  Ms. Mitchell was never properly served in the case, and the John Doe defendant was never named.  Local #333 moved to dismiss the case for lack of subject matter jurisdiction, arguing that Mr. El-Amin lacked standing to bring the action under the LMRDA because his membership in the union had been suspended for nonpayment of dues.  In support of their position, Local #333 submitted an affidavit from the union's new secretary/treasurer, Mr. Daryl Wilburn.  The affidavit stated, in pertinent part:

> Mr. El-Amin last paid dues on June 2, 2009 in the amount of $805.00.  This payment kept Mr. El-Amin a member in good standing through December 31, 2008.  Based on the date and amount of Mr. El-Amin's last dues payment, in order to avoid the possibility of automatic suspension from membership, he was

4

> obligated to pay all back dues on or before February 28, 2010. . . . Based on his
> failure to pay back dues . . . Mr. El-Amin's membership was suspended effective
> March 29, 2010.

(Compl. 6; Wilburn Aff. ¶¶ 7–9, ECF No. 17, Ex. 5.)  On June 28, 2011, this court agreed that

Mr. El-Amin lacked standing because of nonpayment of dues and dismissed the case as to all

defendants.

Subsequent to the decision, Mr. El-Amin sent a letter to Roland Day, a vice-president of

Local #333, and in response Mr. Day advised Mr. El-Amin that he had been "expelled and

dropped" from the Local for failure to pay his union dues.  (Compl. 4–5.)  On September 9,

2011, Mr. El-Amin received what he believed to be confirmation of this fact when MassMutual

Financial Group advised Mr. El-Amin that "you or your Plan Sponsor" had notified the company

of an address change for him.  (*Id.* at 5.)  Mr. El-Amin then telephoned Local #333's Severance

and Annuity Fund's office and spoke with defendant McKnight, who told him that "he had been

terminated from the local which automatically caused plaintiff to be dropped from the union's

Pension Plan. . . ."  (*Id.*)  On October 5, 2011, Mr. El-Amin sent a letter to Mr. Blom requesting

an informal resolution of his grievance with Local #333.  In his communications with ILA

officials, Mr. El-Amin contended that he had not received a ten-day notice as required by the

ILA constitution before any action to terminate his membership could take place.

In a letter dated November 8, 2011, Mr. Blom responded:

> Your status with ILA Local 333 is that you have been suspended for non-payment
> of dues.  According to our financial secretary's records, you have not paid any
> dues to our local since 2008.  Therefore, you would owe three years of back dues
> but since at $780 a year, that would be over the amount of a new initiation fee, the
> total owed would be $2,000 plus $195 for the current quarter of dues for a total of
> $2,195. . . . Upon your payment of the back monies owed to our local, you would
> return to being a member in good standing of our local.

5

(*Id.* at 6; Blom Letter, ECF No. 17, Ex. 3.)  Mr. El-Amin contends the dates in this letter conflict with the dates in Mr. Wilburn's earlier affidavit.

On November 28, 2011, Mr. El-Amin filed a new lawsuit in this court, again requesting reinstatement of his union membership, an upgrade in seniority, and damages.  In this case, however, Mr. El-Amin did not originally name Local #333 as a defendant.  Instead, he named only defendants Mitchell, McKnight, and Blom.  And, instead of expressly bringing suit under the LMRDA, Mr. El-Amin alleges claims of promissory estoppel (Count One); wrongful termination in retaliation for exercising First Amendment Right (Count Two); denial of due process (Count Three); unlawful discrimination (Count Four); conspiracy to violate ERISA (Count Five); negligent misrepresentation (Count Six); fraudulent misrepresentation of back union dues (Count Seven); and conspiracy to disenfranchise and civil rights violations (Count Eight).

On December 14, 2011, Mr. El-Amin filed a motion for a temporary restraining order and preliminary injunction.  (ECF No. 6.)  On February 8, 2012, defendant Mitchell filed a motion to dismiss.  (ECF No. 12.)  The following day, defendant McKnight filed a motion to dismiss. (ECF No. 13.)  Shortly thereafter Local #333 notified the court that Mr. Blom was no longer president of the Local and therefore service had not been effected on him when the union was served on his behalf.  Mr. El-Amin filed responses to the two motions to dismiss, and, on March 9, 2012, he filed a motion to file an amended complaint in order to substitute Local #333 for John Blom as the third defendant in the case.

## II.    DISCUSSION

A pro se complaint must be liberally construed in favor of the plaintiff.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is to be liberally construed, . . . and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (internal quotation marks and citations omitted)).   Applying this standard, the court first considers defendants' motions to dismiss and then considers Mr. El-Amin's motion for leave to file an amended complaint.

### A.  Motions to Dismiss

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint and does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  When ruling on a 12(b)(6) motion, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff."  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  The plaintiff's obligation is to *show* sufficiently the "grounds of his entitlement to relief," offering "more than labels and conclusions." *Id.*  It is not sufficient that the well-pleaded facts suggest "the mere possibility of misconduct." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1950 (2009).  Rather, to withstand a motion to dismiss, "a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face,"

meaning the court could draw "the reasonable inference that the defendant is liable for the

conduct alleged." *Id*. at 1949 (internal quotations and citation omitted).

### 1.  Claims based on failed transfer to Local #1922

Mr. El-Amin bases two of his eight causes of action on his allegation that Ms. Mitchell

failed to properly prepare an official transfer card as allegedly required to make his transfer to

Local #1922 automatic under the ILA constitution.  For this failure, he alleges that Ms. Mitchell

should be liable under the doctrines of promissory estoppel (Count I) and negligent

misrepresentation (Count VI).  Both counts must be dismissed for failure to state a claim.

Promissory estoppel is "an equitable remedy that permits recovery where, in fact, there is

no contract, but where circumstances are such that justice warrants a recovery." *Odyssey Travel

Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 626 (D. Md. 2003) (internal quotation

omitted); *see also Pavel Enters., Inc. v. A.S. Johnson Co., Inc.*, 674 A.2d 521, 531 (Md. 1996)

(describing promissory estoppel as a remedy allowing recovery when a contract claim would fail,

e.g., for lack of consideration or violation of the statute of frauds).  Under Maryland law, the

elements of a claim for promissory estoppel are (1) a clear and definite promise by the defendant,

(2) a reasonable expectation by the defendant that the promise will induce action or forbearance

by the plaintiff, (3) the promise does induce actual and reasonable action or forbearance by the

plaintiff, and (4) a resulting detriment to the plaintiff that can only be avoided by enforcement of

the promise. *See Mogavero v. Silverstein*, 790 A.2d 43, 51 (Md. App. 2002).

The elements of an actionable tort claim for negligent misrepresentation are:

(1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement;
(2) the defendant intends that his statement will be acted upon by the plaintiff;
(3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;
(4) the plaintiff, justifiably, takes action in reliance on the statement; and
(5) the plaintiff suffers damage proximately caused by the defendant's negligence.

*Gross v. Sussex Inc.*, 630 A.2d 1156, 1162 (Md. 1993).  Thus, a successful action for negligent misrepresentation, like promissory estoppel, requires a plaintiff to show reasonable or justifiable reliance.  It is this justifiable reliance that Mr. El-Amin has not sufficiently alleged.

Mr. El-Amin alleges that Ms. Mitchell made him a "membership transfer promise." According to Mr. El-Amin, he was "informed by defendant Mitchell that the transfer he sought was automatic as long as he was a member of the ILA in good standing" and Ms. Mitchell informed him "that he met the requirements for the requested transfer."  (Compl. 3.)  Mr. El-Amin "asked that defendant Mitchell process the necessary paperwork to facilitate the transition from Local #333 unto Local #1922" and Ms. Mitchell then provided him with the letter stating that he was in good standing and wished to transfer. (*Id.*)  In reliance on this interaction and the letter, Mr. El-Amin alleges, he quit his job, "donated a major portion of his household possessions and winter clothing as charitable gifts," and "incurred substantial relocation cost" to Florida. (*Id.*)

In support of his claim, Mr. El-Amin directs the court's attention to *Kathleen Rice. v. Alaska Dem Party*, 934 P.2d 1313 (Alaska 1997).   In that case, the chair-elect of the Alaska Democratic Party offered the plaintiff a two-year position as executive director of the Party, and the plaintiff allegedly resigned her position on the Gore vice-presidential campaign to return to Alaska, after which the newly-minted chair informed her she could not have the job.  The Alaska

Supreme Court upheld a jury verdict in favor of the plaintiff, finding that the denial of summary judgment on promissory estoppel was not in error, *id.* at 1316–17, and that evidence in the record adequately supported the negligent misrepresentation verdict, *id.* at 1319–20.

Unlike the party chair in *Alaska Democratic Party*, however, Ms. Mitchell did not have the power to make the ultimate decision at issue—here, whether to allow Mr. El-Amin to become a member of Local #1922.  Rather, that power rested in the hands of the officers of Local #1922 and the international executive officers to whom Mr. El-Amin could and did appeal the Local #1922 decision.  If it had been Local #1922 that had provided Mr. El-Amin with a document authorizing his transfer—or had otherwise expressed orally or in writing to him that his request to transfer would be accepted—then Mr. El-Amin might have reasonably or justifiably relied on that representation.  Mr. El-Amin does not, however, allege that he ever contacted Local #1922 before he took all of these actions, nor does he allege that Ms. Mitchell contacted Local #1922 on his behalf.  Rather, he alleges only that he relied on Ms. Mitchell's oral statements to him that led him to believe that the letter she gave him would make his transfer automatic.  No reasonable jury could find, in the absence of any alleged communication with or from the purported arbiter of his employment, Local #1922, that it was "justifiable," *Gross*, 630 A.2d at 1162, or "reasonable," *Mogavero*, 790 A.2d at 51, for Mr. El-Amin to rely on Ms. Mitchell's oral representation alone when he quit his job and gave away many of his possessions.

The factual allegations in Mr. El-Amin's pleadings and documents support this conclusion.  For example, in her September 4, 2009, letter to Local #1922, Ms. Mitchell stated that she "had informed [Mr. El-Amin] that [the transfer] letter doesn't promise him a guarantee to work or union membership and that work is slow all over."  (ECF No. 17, Ex. 1.)  And, while

Mr. El-Amin alleges he was denied transfer because of the improper format of Ms. Mitchell's transfer letter, he includes no reference to specific facts to support this conclusion.  Mr. El-Amin admits to "exhausting all his union administrative remedies," (Compl. 4), and that he did so "to no avail."  (Pl.'s Opp. to Mitchell 14.)  But while he references and incorporates language from other key letters and documents, any evidence of the ultimate decision by the ILA international executive officers is conspicuously absent.   In sum, the factual allegations in the complaint do not support Mr. El-Amin's claims for promissory estoppel and negligent misrepresentation.  Both claims therefore will be dismissed.

### 2.   Claims based on alleged wrongful termination

Mr. El-Amin brings two claims based on the allegation that Ms. Mitchell wrongfully terminated his membership in Local #333 sometime between July and September of 2009.  The claims, for wrongful termination (Count II) and for denial of due process (Count III), are properly brought under the LMRDA, and Mr. El-Amin correctly identifies the governing law.  The causes of action, however, also must be dismissed for failure to state a claim upon which relief may be granted.

Subchapter II of the LMRDA, entitled the Bill of Rights of Members of Labor Organizations, guarantees union members "right to free speech," *Keeffe Bros. v. Teamsters Local Union No. 592*, 562 F.2d 298, 304 (4th Cir. 1977), and to "procedural due process," *Kowaleviocz v. Local 333 of Int'l Longshoremen's Ass'n*, 942 F.2d 285, 288 (4th Cir. 1991).  These rights are protected from abuse by unions pursuant to the statutory authority of the LMRDA, so the claims of retaliation and denial of due process at issue here do not require "state action" as do such

claims raised directly under the United States Constitution.[2]  *Sadlowski v. United Steelworkers of Am., AFL-CIO-CLC*, 645 F.2d 1114, 1122 (D.C. Cir. 1981) ("[T]the Bill of Rights guarantees of the LMRDA are not limited to situations involving 'state action.'"), *rev'd on other grounds*, 457 U.S. 102 (1982).

Contrary to defendants' contention, individual union officers may be held liable for damages for violation of the LMRDA, as long as the officers "have acted under color of and in abuse of their authority as union officers." *Eisman v. Baltimore Reg'l Joint Bd. of Amalgamated Clothing Workers of Am.*, 352 F. Supp. 429, 437 (D. Md. 1972), *aff'd*, 496 F.2d 1313 (4th Cir. 1974); *accord Dilacio v. New York City Dist. Council of the United Bhd. of Carpenters & Joiners of Am.*, 593 F. Supp. 2d 571, 576 (S.D.N.Y. 2008) (citing *Morrissey v. Nat'l Mar. Union of Am.*, 544 F.2d 19, 24 (2d Cir. 1976)); *Waring v. Int'l Longshoremen's Ass'n, Local 1414 of Savannah, Ga.*, 665 F. Supp. 1576, 1581–82 (S.D. Ga. 1987) (considering and rejecting argument that the LMRA limit in 29 U.S.C. 185(b) should apply to LMRDA cases).

Defendants also argue that Mr. El-Amin's LMRDA claims are barred by res judicata because this court already considered them or had the opportunity to do so in this court's prior decision.  Mr. El-Amin is correct that "[d]ismissals without prejudice do not bar subsequent suits by res judicata."  *Choice Hotels Int'l, Inc. v. Goodwin & Boone*, 11 F.3d 469, 473 (4th Cir. 1993).  Mr. El-Amin's previous case was dismissed without prejudice.  *Cf. Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1234–35 (11th Cir. 2008) (explaining that a dismissal for lack of standing is necessarily without prejudice because the court lacked subject matter jurisdiction and thus could not reach the merits of the claim).

---

[2] To the extent Mr. El-Amin intended to bring his claims under the Fourteenth Amendment of the U.S. Constitution, however, defendants are correct that such claims would fail for lack of state action in this case.

Therefore res judicata does not apply.   Nonetheless, considered anew here, Mr. El-Amin's LMRDA claims must again be dismissed.

In his previous case, Mr. El-Amin challenged his suspension from membership in Local #333 in March 2010 for failure to pay his dues.   Here, instead, Mr. El-Amin claims he was "illegally expelled and dropped from membership with Local 133 by defendant Mitchell sometime between July 2009 and September 2009."  (Pl.'s Opp. to Def. Mitchell's Mot. Dismiss 13, ECF No. 17.)   Mr. El-Amin's claim appears to be based solely on the September 4, 2009, letter to Local #1922 in which Ms. Mitchell referred to Mr. El-Amin as a "past member."  (*See Id.* at 10, 12, 13, 14, 15, 20.)   According to Mr. El-Amin, Ms. Mitchell

> [made] the decision to retaliate against plaintiff by clandestinely terminating plaintiff from membership with Local 333 without affording plaintiff the I.L.A. procedural due process.  Instead it was done via the September 4, 2009 document. Plaintiff submits and further avers that the most logical conclusion that can be derived by both reasoning and evidence is that defendant Mitchell clearly expressed in [the letter] that plaintiff's membership with ILA Local 333, *No Longer Existed as of September 4, 2009*; and that he was at that time officially a former member.  Defendant Mitchell clearly gave *official Notice* to the president of ILA Local 1922, that plaintiff was at that time a *former* member of Local 333 . . . .

(*Id.* at 15 (emphasis in original).)

No other evidence in the record at this time, however, supports Mr. El-Amin's theory that his membership was formally terminated during the specified time period or that Local #1922 interpreted Ms. Mitchell's letter as a statement that she had done so.  In fact, Mr. El-Amin notes that "Local 333's administrative officials may not have received Copy of the [September letter] since defendant Mitchell managed Local #333 business office [sic]," (*id.* at 12), and Mr. El-Amin himself was "never . . . officially notified that any changes was or would be made relative to his membership status." (*Id.* at 13.)  Rather, Local #333 officials consistently described Mr.

El-Amin as suspended for failure to pay dues, not as terminated.  For example, Mr. El-Amin describes how Ms. Mitchell and the interim President of the Local told him that he owed $1500 in back dues when he returned to Baltimore in the summer of 2010, which he could not have owed had his membership been terminated.  (*Id.* at 12–13.)  Mr. El-Amin also admits that the affidavit submitted by Local #333's subsequent Secretary Treasurer, Daryl Wilburn, "clearly contradicts" the conclusion that he had been terminated by the September 2009 letter, (*id.* 17), as the affidavit explained that Mr. El-Amin was suspended for failure to pay dues on March 29, 2010.  (*See* Wilburn Aff., ECF No. 17 Ex 5.)  Finally, the November 8, 2011, letter from defendant Blom describes the same sequence of events as the Wilburn affidavit.  (*See* Blom Letter, ECF No. 17, Ex. 3.)

In weighing a motion to dismiss, the court must "accept the well-pled allegations of the complaint as true," *Ibarra*, 120 F.3d at 474, but it "need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).  Mr. El-Amin's proffered explanation of the course of events—an obliquely referenced termination effectuated through a letter hidden from the Local #333 administrative office, followed by a defendant Mitchell "cooking the books" in order to demand back dues—is unwarranted and unreasonable.  The only reasonable inference to draw from the letter is that Ms. Mitchell used the term "past member" colloquially, given that Mr. El-Amin had already quit his job in Baltimore and moved to Florida.  Aside from the letter, all of the evidence in the record supports the only reasonable conclusion, which is that Mr. El-Amin's membership with Local #333 was never in fact officially terminated.  Because he cannot prove

14

that his membership was terminated, Mr. El-Amin has no claim for retaliation or denial of due process based on wrongful termination.[3]  Counts II and III of the complaint therefore will be dismissed.

### 3.   Unlawful Discrimination and Civil Rights Claims

Mr. El-Amin's complaint alleges separate counts of "Unlawful Discrimination" (Count IV) and "Conspiracy to Disenfranchise and Civil Rights Violations" (Count VIII).  Though he does not specify the statutory or Constitutional basis for these claims, the gravamen of his argument is that the failed transfer and related difficulties are the result of discrimination against him because he is African-American and Muslim.  The only specific evidence of this claim that Mr. El-Amin proffers is the alleged "disparity in treatment" with regard to his suspension for nonpayment of dues.  (Compl. 7.)  He alleges, on information and belief, that "defendant Mitchell herself and another local official Victor Able failed to pay any union dues whatsoever for several years and when it was discovered, they were not suspended . . . they were allow [sic] to escape with impunity, but, was [sic] eventually denied an opportunity to run for reelection partially because of the failure to pay back union dues." (*Id.*)  Mr. El-Amin does not appear to allege discrimination or civil rights violations against Mr. McKnight.

The court interprets Mr. El-Amin's claim as one for discriminatory discipline under Title VII of the Civil Rights Act of 1964, *see Byrd v. The Baltimore Sun Co.*, 279 F. Supp. 2d 662,

---

[3] In discussing his ERISA claim, Mr. El-Amin also describes a sequence of events in 2011 when his membership was allegedly terminated, but then the termination was revoked and instead he was advised that he was suspended. (See Pl.'s Opp. to Def. McKnight's Mot. Dismiss 5–7, ECF No. 20-1.)  His claim for wrongful termination and denial of due process, however, appear to be based only on the September 4, 2009, letter and not on this sequence of events.  (*See generally* Pl.'s Opp. to Def. Mitchell's Mot. Dismiss.)  To the extent he does claim that the incident with his ERISA plan constituted an LMRDA violation, however, his claim would fail for the same reason that his ERISA claim fails, as discussed below.  Because Local #333 officials and defendant McKnight appear to have immediately remedied the allegedly unlawful termination, any claim based on those actions would be moot.

668 (D. Md. 2003) (describing a claim for discriminatory discipline), which therefore must be dismissed for lack of subject matter jurisdiction.  Title VII suits can only proceed in federal court if the plaintiff has already exhausted his administrative remedies by filing a claim for discrimination with the Equal Employment Opportunities Commission.  *See Talbot v. U.S. Foodservice*, 204 F. Supp. 2d 881, 883 (D. Md. 2002) (citing *Bratton v. Bethlehem Steel Corp.*, 649 F.2d 658, 666 (9th Cir. 1980)); *see also Bryant v. Bell Atl. Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002) ("Before a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC.").  Mr. El-Amin does not allege that he has filed a discrimination charge with the EEOC, and therefore his Title VII claim must be dismissed.[4]

### 4.  ERISA-related claims

Mr. El-Amin alleges defendants Blom and McKnight conspired to violate ERISA (Count V) by terminating his participation in the ILA pension plan and then later rescinding the termination when Mr. El-Amin challenged his alleged termination as a member of Local #333. Defendant Blom was not properly served in this case, so defendant McKnight is the only defendant against whom Mr. El-Amin seeks damages for violation of ERISA.   Mr. El-Amin does not specify the exact nature of his ERISA claim, though it appears that the claim is a state-law claim of common law civil conspiracy, which at least one other judge in this district has found viable with regard to an ERISA plan.  *See Vogel v. Independence Fed. Sav. Bank*, 728 F. Supp. 1210, 1232 (D. Md. 1990).   Mr. El-Amin does not request injunctive relief or

---

[4] In addition, the court notes, supervisors "are not liable in their individual capacities for Title VII violations." *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 178 (4th Cir. 1998).  The court sees no reason to apply this rule differently as to union officials.

compensatory damages; he requests only punitive damages in the amount of $100,000 from defendants.

Defendant McKnight argues that he is not a proper defendant to an ERISA claim, that Mr. El-Amin has not alleged any actual damages, and that no punitive damages are available under ERISA.  The court need not determine whether Mr. McKnight is a proper defendant in order to agree.  A successful state-law civil conspiracy claim requires that the act "must result in damages to the plaintiff."  *Vogel*, 728 F. Supp. at 1232 (quoting *Green v. Washington Suburban Sanitary Comm'n*, 269 A.2d 815, 824 (Md. 1970)).  Mr. El-Amin does not claim that he was denied any benefits as a result of defendants' alleged actions or that defendants' alleged actions caused him any damages.  (Compl. 10).  Thus, he has no conspiracy claim.  And, to the extent that Mr. El-Amin intends to bring his action for ERISA violations as a claim for breach of fiduciary duty, that claim also fails.  Defendants correctly note that punitive damages are not available in actions brought by an individual ERISA plan beneficiary for breach of fiduciary duty.  *See Powell v. Chesapeake & Potomac Tel. Co. of Virginia*, 780 F.2d 419, 424 (4th Cir. 1985).  Mr. El-Amin therefore fails to state a claim under or related to ERISA.

### 5.  Fraudulent misrepresentation of back union dues

Finally, Mr. El-Amin's claim for "fraudulent misrepresentation of back union dues" (Count VII) must be dismissed as well.  Mr. El-Amin contends Mr. Blom fraudulently misrepresented the amount of back union dues that Mr. El-Amin owed in his November 8, 2011, letter.  Mr. Blom was never properly served in this case, and Mr. El-Amin does not clearly allege fraudulent misrepresentation by the other defendants.  While his complaint and briefing contain

references to his dissatisfaction with Ms. Mitchell's handling of his return to Baltimore and request for payment of back dues, Mr. El-Amin's claim falls far short of alleging fraud with the particularity and clarity required under the federal pleading standards for fraud of Fed. R. Civ. P. 9(b).  *See Heritage Oldsmobile-Imports v. Volkswagen of Am., Inc.*, 264 F. Supp. 2d 282, 291 (D. Md. 2003) (applying the heightened Rule 9(b) pleading standard to a Maryland state law claim for fraudulent misrepresentation).

### B.  Motion to Amend

Mr. El-Amin moves for leave to amend his complaint to substitute Local #333 for Mr. Blom as the third defendant in this case.  Federal Rule of Civil Procedure 15(a)(2) encourages district courts to "freely give leave [to file an amended complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2).  The Fourth Circuit has counseled, however, that "leave to amend is not to be granted automatically."  *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987).  Rather, "[d]isposition of a motion to amend is within the sound discretion of the district court."  *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  A district court may deny leave to amend "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile."  *HCMF Corp. v. Allen*, 238 F.3d 273, 276 (4th Cir. 2001) (quoting *Edwards*, 178 F.3d at 242).  An amendment is futile "when the proposed amendment is clearly insufficient or frivolous on its face," *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986), or if the amended claim would "still fail to survive a motion to dismiss" pursuant to Fed. R. Civ. P. 12(b)(6).  *Perkins v. U.S.*, 55 F.3d 910, 917 (4th Cir. 1995).

Mr. El-Amin's motion for leave to amend would be futile for all of his eight causes of action.  As Mr. El-Amin correctly notes, Ms. Mitchell acted as an agent of Local #333 when she took the various actions at issue in this case.  Accordingly, to the extent that the claims against Ms. Mitchell must be dismissed for failure to state a claim, the claims against Local #333 based on her actions would also be dismissed.  Similarly, the ERISA claim was dismissed because no damages were pleaded and no punitive damages are available for breach of fiduciary duty, a fact that would not be affected by the addition of Local #333 as a defendant.  Of all of the above causes of action, the court has determined that only the fraudulent misrepresentation claim should be dismissed for failure to serve the appropriate defendants.  Amending the complaint to add Local #333 as a defendant would thus *necessarily* be futile as to all but the claim for fraudulent misrepresentation, which requires separate consideration.

If the court were to allow Mr. El-Amin the opportunity to amend his complaint to include Local #333 as a defendant in the action for fraudulent misrepresentation, the action would fall under "the preemptive effect of § 301(a)" of the Labor Management Relations Act (LMRA).  *See Prevas v. Hopkins*, 905 F. Supp. 271, 274 (D. Md. 1995) (citing *Wooddell v. Electr. Workers*, 502 U.S. 93, 97–103 (1991)).  As the court in *Prevas* explained, state law tort suits by union members against their union that are based on the language of a union constitution may be preempted by the LMRA.  *Id.* at 274–76.  Stated differently, "[a]s a general rule, a tort claim that is 'inextricably intertwined with consideration of the terms of the labor contract' is preempted by § 301."  *Becker v. United Bhd. of Carpenters & Joiners Millwright Local 1755*, 812 F. Supp. 635, 638 (S.D. W. Va. 1993) (quoting *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 213), *aff'd*, 27 F.3d 562 (4th Cir. 1994).

19

The court finds that Mr. El-Amin's fraudulent misrepresentation claim is based on the terms of the Local #333 constitution.  In the November 8, 2011, letter at issue, Mr. Blom stated the following:

> According to our financial secretary's records, you have not paid any dues to our local *since 2008*.  Therefore, you would owe three years of back dues but since at $780 a year, that would be over the amount of a new initiation fee, the total owed would be $2,000 plus $195 for the current quarter of dues for a total of $2,195. . . . Upon your payment of the back monies owed to our local, you would return to being a member in good standing of our local.

(Blom Letter, ECF No. 17, Ex. 3 (emphasis added).)  Mr. El-Amin argues that the language in the letter contradicts the language in Mr. Wilburn's affidavit, where Mr. Wilburn stated that "Mr. El-Amin last paid dues on June 2, *2009* in the amount of $805.00."  (*Id.* Ex. 5 (emphasis added).)[5]  These communications reference the Local #333 constitution without expressly noting the specific section numbers.  In addition, supporting Mr. El-Amin's claim that his back dues may have been misstated, the court notes that Article XIV Section 6 of the ILA constitution states that "[a]ny member who has been suspended or expelled for the non-payment of dues or assessments may be reinstated only upon the payment of all monies due *at the time of his suspension* or expulsion."   Civil No. CCB-10-3653, ECF No. 10-2 (emphasis added).   It is therefore not clear to the court why the amount of Mr. El-Amin's back dues should have continued to increase after his membership was suspended on March 28, 2010.

Because his claim of fraudulent misrepresentation is based on the union constitution, and

---

[5] In Mr. Wilburn's affidavit, he also noted that the June 2, 2009 payment "kept Mr. El-Amin a member in good standing through December 31, 2008."  Possibly, then, Mr. Blom's statement that Mr. El-Amin had not paid "since 2008" is accurate and based on the same information as Mr. Wilburn's affidavit.  Mr. El-Amin argues instead that Mr. Wilburn's affidavit contains a typo.  If he had only been a member in good standing through December 31, 2008, Mr. El-Amin questions how Ms. Mitchell could have written him a letter in July of 2009 stating that he was a member in good standing at that time.  And, the fact that he was not suspended for failure to pay dues until March of 2010 also provides evidence that his June 2, 2009, payment may in fact have resulted in his membership good standing lasting until December 31, 2009 – not 2008 as defendants now claim.

the claim therefore "may be encompassed by the preemptive effect of § 301(a)," *Prevas*, 905 F. Supp. at 274, the court has the "sound discretion" to determine whether to require Mr. El-Amin to exhaust his internal union remedies before bringing suit in federal court.[6]   *Prevas*, 905 F. Supp. at 275 (quoting *Kowaleviocz v. Local 333 of Int'l Longshoremen's Ass'n*, 942 F.2d 285, 288 (4th Cir. 1991)).   While Mr. El-Amin appears to have exhausted his remedies under the ILA constitution for his claims regarding his failed transfer to Local #1922, he does not appear to have done so for his claim that Local #333 has misstated his back dues.   A court may excuse a failure to exhaust union remedies where "the disciplinary action taken by the union against [the plaintiff] was indisputably illegal or 'void,'" *Kowaleviocz*, 942 F.2d at 288.   Here, the court cannot make this determination from the face of the complaint and thus will not exercise its discretion to excuse Mr. El-Amin's failure to exhaust his union remedies.   As a result, Mr. El-Amin's amended complaint is futile as to his claim for fraudulent misrepresentation as well.

### III.  CONCLUSION

In sum, the motions to dismiss filed by defendants Mitchell and McKnight will be granted with prejudice.   Mr. El-Amin's motion for leave to file an amended complaint will be denied without prejudice as to his claim of fraudulent misrepresentation against Local #333, pending the outcome of any effort to exhaust his internal union remedies.   His motion for leave to amend will be denied *with* prejudice as to all other claims.

---

[6] In *Prevas*, the court based this conclusion on the language in the union's constitution that required an exhaustion of union remedies.   *Prevas*, 905 F. Supp. at 275.   Here, the court has not been provided with similar language from the ILA constitution.   Because Local #333 is not yet party to this action, however, the court infers the existence of such language in the ILA constitution from the *Kowaleviocz* decision, in which the panel implies its existence. *Kowaleviocz v. Local 333 of Int'l Longshoremen's Ass'n*, 942 F.2d 285, 288–89 (4th Cir. 1991).

A separate order follows.


_____July 5, 2012_____                    _____/s/_____
Date                                        Catherine C. Blake
                                            United States District Judge